# EXHIBIT A

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
268 Bush Street #3732
San Francisco, CA 94104
Tel: (415) 624-7602
Email: jacob@harkercounsel.com

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California
County of Marin
**11/07/2025**
James M. Kim, Clerk of the Court
By: E. Riedel, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF MARIN (UNLIMITED JURISDICTION)

| | |
|---|---|
| KRISTINA KIRBY, an individual;<br>KEEHNAN ANDERSON, an individual;<br>JONATHAN BRADSHAW, an individual;<br>LORENIA BRYANT, an individual;<br>TANISHA CLARK, an individual;<br>BRIDGETTE GOODMAN, an individual;<br>DAMOND HARRIS, an individual;<br>COY JOHNSON, an individual;<br>DANIELLE JONES, an individual;<br>DEIDRE LOVE, an individual;<br>EVON MARTIN, an individual;<br>STACY MCBRIDE, an individual;<br>DORIAN MEDINA, an individual;<br>JOSE PEREDA, an individual;<br>DARRELL ROGERS, an individual;<br>KEYA THORNABAR, an individual;<br>JUANITA WELLS, an individual;<br>SHAMICA WHITTAKER, an individual; and<br>CARLLIE JUANITA WILLIAMS, an individual;<br><br>       Plaintiffs,<br><br>  v. | Case No.: CV0008127<br><br>**COMPLAINT FOR LIQUIDATED DAMAGES**<br><br>1. **VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Bus. & Prof. Code § 17529.5)**<br><br>2. **AIDING AND ABETTING VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Bus. & Prof. Code § 17529.5)** |

CONVERSION SQUARED CORPORATION, a Wyoming corporation;
EXPLORE MEDIA, a business entity of unknown organization;
HOUSING SERVICES, a business entity of unknown organization;
MLB, a business entity of unknown organization;
NECRON SYSTEMS, a business entity of unknown organization;
NET MEDIA1 LLC, a business entity of unknown organization;
SELL MY HOUSE FAST, a business entity of unknown organization;
WALLETMONKEYS, a business entity of unknown organization;
AFFID=495, a business entity of unknown organization;
AFFID=1184, a business entity of unknown organization;
AFFID=2658, a business entity of unknown organization; and
DOES 1-1,000;

Defendants.

COME NOW PLAINTIFFS KRISTINA KIRBY *et al* and file this Complaint for two causes of action against Defendants CONVERSION SQUARED CORPORATION *et al* and allege as follows:

## I. CALIFORNIA'S ANTI-SPAM LAW

1. The substantive law in this Action is California's robust Anti-Spam Law, Business & Professions Code § 17529.5 ("Section 17529.5"), which regulates California "spamvertisers" (entities who advertise in spam emails) *and* spams sent to California residents. Section 17529.5 prohibits advertising in unsolicited commercial email advertisements aka "spams" that include: a) Third parties' domain names without permission; b) Materially false, misrepresented, and/or forged information contained in or accompanying the email headers; and/or c) Subject Lines that are likely to mislead a reasonable recipient as to the contents or subject matter of the spams. *Id.* at § 17529.5(a).

COMPLAINT FOR LIQUIDATED DAMAGES

2.    Advertisers (i.e. the persons or entities whose products and services are being advertised) are strictly liable for *advertising in* unlawful spams under Section 17529.5, even if they engage or otherwise associate with someone(s) else who are involved with *sending* (or assisting with the sending of) the spams.  Bus. & Prof. Code § 17529(j), (k); *Greenberg v. Digital Media Solutions LLC*, 65 Cal. App. 5th 909, 920 (1st Dist. 2021), citing *Hypertouch Inc. v. ValueClick Inc. et al*, 192 Cal. App. 4th 805, 820-21 (2d Dist. 2011).

3.    Spam recipients are not required to allege or prove scienter, reliance, or actual damages (i.e. common-law fraud) to have standing to bring claims.  Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820.

4.    Spams materially violate Section 17529.5(a)(2) – and so plaintiffs' claims are not preempted by the federal CAN-SPAM Act – if the spams are sent from domain names that do not identify the *actual senders* on their faces and are not readily traceable to the *actual senders* by querying a publicly available database such as WHOIS, even if the bodies of the spams identify the *advertiser*. *Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1101 and n.16 (1st Dist. 2012); *Greenberg*, 65 Cal. App. 5th at 919-920.  Spams materially violate Section 17529.5(a)(3) if the Subject Lines are likely to mislead a recipient about a material fact regarding the contents or subject matter of the email.  Spams materially violate Section 17529.5(a)(1) if they include a third party's domain name without permission from the third party.

5.    The statute sets liquidated damages at $1,000 per spam, which can be reduced if defendants can prove that they established and implemented reasonably effective practices and procedures to prevent unlawful "spamvertising." Bus. & Prof. Code § 17529.5(b)(1)(B)(ii), (b)(2).

6.    In fact, violating Section 17529.5 is a crime punishable by imprisonment in a California county jail.  Bus. & Prof. Code § 17529.5(b)(3)(C).

7.    A prevailing spam recipient, but not a prevailing defendant, may recover reasonable attorneys' fees and costs.  Bus. & Prof. Code § 17529.5(b)(1)(C).

## II. INTRODUCTION AND SUMMARY OF THE COMPLAINT

8.    Plaintiffs KRISTINA KIRBY *et al* bring this Action against professional "spamvertiser" CONVERSION SQUARED CORPORATION ("CONVERSION") because Plaintiffs

collectively received **234 unlawful unsolicited commercial emails ("spams")** promoting CONVERSION (the advertiser) and its dating websites/services.

9.      Plaintiffs also sue CONVERSION's marketing partners/agents: the **actual senders** (aka publishers or spammers) who aided and abetted CONVERSION's unlawful "spamvertising," and others, such as the **spam networks**, who conspired with the spammers to send the spams and to aid and abet CONVERSION's unlawful spamvertising.  The actual senders took active steps to conceal their identities when they registered the domain names used to send the spams at issue such that Plaintiffs cannot identify them from the sending domain names.  Nor do the bodies of the spams identify the actual senders.

10.     The CONVERSION spams at issue all materially violated at least one provision of Section 17529.5(a).

11.     Exhibits A-C, incorporated herein by reference, are representative samples of the spams at issue.

12.     Plaintiffs never gave "direct consent" to receive commercial email advertisements from, or had a "preexisting or current business relationship" with, CONVERSION – the advertiser.

13.     CONVERSION violated Plaintiffs' statutory right to be free from receiving unlawful spams.  Plaintiffs also suffered actual damages from the receipt of the CONVERSION spams at issue, but only seek to recover statutory damages.

14.     CONVERSION is strictly liable under Section 17529.5 for *advertising in* the criminally unlawful spams at issue, even though it engaged or otherwise associated with someone(s) else – most likely the spam networks – to send the spams or to contract with the spammers to actually send the spams.  To be clear, Plaintiffs allege that CONVERSION did *not* actually send the spams itself.

15.     By promoting CONVERSION and its dating websites/services, the spammers aided and abetted CONVERSION's criminally unlawful spamvertising, and other entities, such as the spam networks, conspired with the spammers to do so.

16.     This Court should award statutory liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because CONVERSION and its spam networks and spammers failed to implement reasonably effective systems to prevent advertising in, aiding and abetting CONVERSION advertising in, or conspiring to aid and abet CONVERSION advertising in, the criminally unlawful spams.

COMPLAINT FOR LIQUIDATED DAMAGES

(CONVERSION is familiar with Section 17529.5, and it has settled claims and been sued for violations of Section 17529.5 in the past.) The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

17.    This court should award Plaintiffs their costs, including their attorneys' fees, pursuant to Section 17529.5(b)(1)(C) and Code of Civil Procedure § 1033.5(a)(10)(B), (c)(5)(A).

### III. PARTIES

**A.    Plaintiffs**

18.    Plaintiff **KEEHNAN ANDERSON ("ANDERSON")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at ANDERSON's email address(es) that they ordinarily access from California.

19.    Plaintiff **JONATHAN BRADSHAW ("BRADSHAW")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at BRADSHAW's email address(es) that they ordinarily access from California.

20.    Plaintiff **LORENIA BRYANT ("BRYANT")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at BRYANT's email address(es) that they ordinarily access from California.

21.    Plaintiff **TANISHA CLARK ("CLARK")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at CLARK's email address(es) that they ordinarily access from California.

22.    Plaintiff **BRIDGETTE GOODMAN ("GOODMAN")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at GOODMAN's email address(es) that they ordinarily access from California.

23.    Plaintiff **DAMOND HARRIS ("HARRIS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue

were sent to and received at HARRIS' email address(es) that they ordinarily access from California.

24. Plaintiff **COY JOHNSON ("JOHNSON")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at JOHNSON's email address(es) that they ordinarily access from California.

25. Plaintiff **DANIELLE JONES ("JONES")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at JONES' email address(es) that they ordinarily access from California.

26. Plaintiff **KRISTINA KIRBY ("KIRBY")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at KIRBY's email address(es) that they ordinarily access from California.

27. Plaintiff **DEIDRE LOVE ("LOVE")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at LOVE's email address(es) that they ordinarily access from California.

28. Plaintiff **EVON MARTIN ("MARTIN")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at MARTIN's email address(es) that they ordinarily access from California.

29. Plaintiff **STACY MCBRIDE ("MCBRIDE")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at MCBRIDE's email address(es) that they ordinarily access from California.

30. Plaintiff **DORIAN MEDINA ("MEDINA")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at MEDINA's email address(es) that they ordinarily access from California.

COMPLAINT FOR LIQUIDATED DAMAGES

31.    Plaintiff **JOSE PEREDA ("PEREDA")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California.  Some of the spams at issue were sent to and received at PEREDA's email address(es) that they ordinarily access from California.

32.    Plaintiff **DARRELL ROGERS ("ROGERS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California.  Some of the spams at issue were sent to and received at ROGERS' email address(es) that they ordinarily access from California.

33.    Plaintiff **KEYA THORNABAR ("THORNABAR")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California.  Some of the spams at issue were sent to and received at THORNABAR's email address(es) that they ordinarily access from California.

34.    Plaintiff **JUANITA WELLS ("WELLS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California.  Some of the spams at issue were sent to and received at WELLS' email address(es) that they ordinarily access from California.

35.    Plaintiff **SHAMICA WHITTAKER ("WHITAKER")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California.  Some of the spams at issue were sent to and received at WHITTAKER's email address(es) that they ordinarily access from California.

36.    Plaintiff **CARLLIE JUANITA WILLIAMS ("WILLIAMS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California.  Some of the spams at issue were sent to and received at WILLIAMS' email address(es) that they ordinarily access from California.

37.    Plaintiffs' joinder in this Action is proper pursuant to Code of Civil Procedure § 378 because Plaintiffs seek relief based on the same series of transactions or occurrences: all received similar spams in the same general time period advertising CONVERSION and its dating websites/services, and all of those spams were sent by, or with the assistance of, CONVERSION's spam networks and spammers.  The same questions of law (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and procedures to prevent advertising in unlawful spams) will arise in this Action.  The fact that each Plaintiff does not sue for *exactly* the same spams does not bar joinder: "It is not necessary that each plaintiff be

7

interested as to every cause of action or as to all relief prayed for. Judgment may be given for one or more of the plaintiffs according to their respective right to relief." Code Civ. Proc. § 378(b).

## B.    Advertiser Defendants

38.    Defendant **CONVERSION SQUARED CORPORATION ("CONVERSION")** is now and was at all relevant times a Wyoming corporation with a principal place of business in Addison, Texas. CONVERSION operates various dating websites, including: areyouinterested.com, bestrelationshipsites.com, browsemypics.com, browsesingles.com, christianmatches.com, christianvipsingles.com, datepetlovers.com, datesinglesonly.com, datingfoodies.com, educatedsinglesonly.com, elitesinglesonly.com, findmymatches.com, findseniorsonly.com, findsinglesonly.com, golfsinglesonly.com, leadthink.com, localprofessionalsingles.com, matchchristiansingles.com, matchseniors.com, matchsinglesonly.com, matchsuccessfulsingles.com, matelocal.com, maturequalitysingles.com, maturevipsingles.com, meet-seniors.com, meetsinglesonly.com, professionalmatch.com, realdatingsingles.com, realmaturesingles.com, singlepeopleonly.com, singlesover30.com, singlesover45.com, thebestmatchmaker.com. CONVERSION advertised in all of the spams at issue. CONVERSION contracted, directly or indirectly, with various marketing partners/agents to send the spams at issue.

39.    Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as **DOES 1-100** and therefore sue said Defendants under the fictitious name of "DOE." DOES 1-100 are directors, owners, officers, employees, or independent contractors of CONVERSION, or predecessors, successors, parents, subsidiaries, or sister companies of CONVERSION, and not of any of the spam networks or spammers, who were personally involved with CONVERSION's unlawful spamvertising. Plaintiffs are informed and believe and thereon allege that each of these Defendants is legally responsible in some manner for the matters alleged in this Complaint, and is legally responsible in some manner for violating Plaintiffs' statutory rights. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as DOES 1-100 was, at all times relevant to the matters alleged within this complaint, acting in conjunction with CONVERSION to advertise CONVERSION and its dating websites/services in the spams at issue. When the identities of DOE Defendants 1-

COMPLAINT FOR LIQUIDATED DAMAGES

100 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement in more detail.

## C.   Marketing Partner/Agent Defendants

### 1. Spammer Defendants

40.    Defendants named in this subsection and DOES 101-500 are the spammers who actually sent the unlawful spams at issue, and thereby aided and abetted CONVERSION's advertising in the unlawful spams.

41.    Defendant **EXPLORE MEDIA ("EXPLORE")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is a box at a commercial mail receiving agency ("CMRA") in Provo, Utah.  EXPLORE is not registered as an entity or a fictitious business name with the Utah Department of Commerce.  EXPLORE does business using the domain name jobflagfinder.com.  EXPLORE sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least two of the spams at issue.

42.    Defendant **HOUSING SERVICES ("HOUSING")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is a box at a CMRA in Boca Raton, Florida.  HOUSING is not registered as an entity or a fictitious business name with the Florida Department of State.  HOUSING does business using the domain name yourhousinghelp.com.  HOUSING sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least one of the spams at issue.

43.    Defendant **MLB ("MLB")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is an office building in Reno, Nevada.  Sometimes MLB does not identify an office/suite number, and other times, it identifies an office/suite number that, on information and belief, belongs to other entities.  MLB also does business as "COG," "RG," and "SDM."  MLB is not registered as an entity or a fictitious business name with the Nevada Secretary of State or the Washoe County Clerk.  MLB does business using the domain names babeinyourarea.com, datetonight.online, eetrightnow.com, funhotbabes.com, isohoc.com, ladieslooking.online, latehothookups.com, latenightmixers.com, luckycharmdates.com, meetfungirls.online, sexybabeslooking.com, sexymilfencounters.com, sexyromances.com, terrti.com, whatchlookingfor23.com, youngsingledating.com.  MLB sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least 111 of the spams at issue.

**COMPLAINT FOR LIQUIDATED DAMAGES**

44.    Defendant **NECRON SYSTEMS ("NECRON")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is a box at a CMRA in Temple, Texas. NECRON is not registered as an entity or a fictitious business name with the Texas Secretary of State. NECRON does business using the domain names fetchhigherincomejobs.com and yourhigherincomejobs.com. NECRON sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least six of the spams at issue.

45.    Defendant **NET MEDIA1 LLC ("NET MEDIA1")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is a box at a Staples store in Richmond, Virginia. NET MEDIA1 is not registered as an entity with the Virginia State Corporation Commission. NET MEDIA1 does business using the domain name finnewsinsights.com. NECRON sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least three of the spams at issue.

46.    Defendant **SELL MY HOUSE FAST ("SELL MY HOUSE FAST")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is a residential address in Alexandria, Virginia. SELL MY HOUSE FAST is not registered as an entity or a fictitious business name with the Virginia State Corporation Commission. SELL MY HOUSE FAST does business using the domain name quickpropertydeals.com. SELL MY HOUSE FAST sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least one of the spams at issue.

47.    Defendant **WALLETMONKEYS ("WALLETMONKEYS")** is now and was at all relevant times a business entity of unknown organization claiming that its principal place of business is a box at a CMRA in Cranberry Township, Pennsylvania. WALLETMONKEYS is not registered as an entity or a fictitious business name with the Pennsylvania Department of State. WALLETMONKEYS does business using the domain name mywalletmonkeys.com. WALLETMONKEYS sent, and aided and abetted CONVERSION's unlawful spamvertising in, at least three of the spams at issue.

48.    Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as **DOES 101-500** and therefore sue said Defendants under the fictitious name of "DOE." These Defendants operate various domain names associated with sending the spams at issue. Plaintiffs are informed and believe and thereon allege that each of these Defendants is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible

**10**

COMPLAINT FOR LIQUIDATED DAMAGES

in some manner for violating Plaintiffs' statutory rights. Plaintiffs are informed and believe and thereon allege that each of these Defendants was, at all times relevant to the matters alleged within this complaint, aiding and abetting CONVERSION's advertising in the unlawful spams at issue. When the identities of these Defendants are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement in more detail.

### 2. *Spam Network Defendants*

49.    Defendants named in this subsection and DOES 501-900 are the spam networks who conspired with the spammers to aid and abet CONVERSION's advertising in the unlawful spams.

50.    Defendant **AFFID=495 ("AFFID=495")** is now and was at all relevant times a business entity of unknown organization with an unknown principal place of business. CONVERSION itself refers to this defendant as "AFFID=495." AFFID=495 does business using the domain names blilospute.com and glizzitrium.com. AFFID=495 conspired with some of the actual senders to aid and abet CONVERSION's unlawful spamvertising in, at least two of the spams at issue.

51.    Defendant **AFFID=1184 ("AFFID=1184")** is now and was at all relevant times a business entity of unknown organization with an unknown principal place of business. CONVERSION itself refers to this defendant as "AFFID=1184." AFFID=1184 does business using the domain name whtenvlpe.com. AFFID=1184 conspired with some of the actual senders to aid and abet CONVERSION's unlawful spamvertising in, at least 15 of the spams at issue.

52.    Defendant **AFFID=2658 ("AFFID=2658")** is now and was at all relevant times a business entity of unknown organization with an unknown principal place of business. CONVERSION itself refers to this defendant as "AFFID=2658." AFFID=2658 does business using the domain names adriopels.com, cahemro.com, jenioram.com, rexomal.com, solirazo.com, and teragost.com. AFFID=2658 conspired with some of the actual senders to aid and abet CONVERSION's unlawful spamvertising in, at least 12 of the spams at issue.

53.    CONVERSION contracted with Defendant spam networks to send spams for them, and the spam networks in turn contracted with the spammers (above). The spam networks conspired with the spammers to aid and abet CONVERSION's advertising in unlawful spams. On information and belief, the spam networks and the spammers agreed to share the benefits and the

risks of the spamvertising. The spam networks and the spammers formed these conspiracies by virtue of entering agreements together. The spam networks effectuated the conspiracies by serving as a middleman between the spammers and CONVERSION by, for instance: a) Contracting with the spammers to send spams promoting CONVERSION; b) Transferring advertising content (e.g. Subject Lines and graphics) from CONVERSION to the spammers whom the networks knew would be sending spams to recipients whom the spammers had no reason to believe ever gave direct consent to CONVERSION to receive its emails or had preexisting or current business relationships with CONVERSION; c) Directing spam recipients who click on the spams to CONVERSION's dating websites; and d) Transferring affiliate commissions generated by unlawful spamvertising from CONVERSION back to the spammers. The spam networks knew that the spammers were going to aid and abet CONVERSION with respect to advertising in unlawful spams, and permitted and ratified such conduct. But for the spam networks' conspiracies with the spammers to aid and abet CONVERSION's unlawful spamvertising, the unlawful spams would not have been sent and Plaintiffs' statutory rights would not have been violated.

54.     Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as **DOES 501-900** and therefore sue said Defendants under the fictitious name of "DOE." These Defendants operate various domain names that are supposed to redirect recipients who click the links in the spams to one of CONVERSION's websites. Plaintiffs are informed and believe and thereon allege that each of these Defendants is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for violating Plaintiffs' statutory rights. Plaintiffs are informed and believe and thereon allege that each of these Defendants was, at all times relevant to the matters alleged within this Complaint, conspiring with the spammer defendants to aid and abet CONVERSION's advertising in the unlawful spams at issue. When the identities of these Defendants are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement in more detail.

### 3. Other Defendants

55.     DOES 901-1,000 are other entities or persons who otherwise aided and abetted, conspired, or assisted with CONVERSION's unlawful spamvertising alleged herein.

COMPLAINT FOR LIQUIDATED DAMAGES

56.    Defendants' joinder in this Action is proper pursuant to Code of Civil Procedure § 379 because Plaintiffs seek relief jointly and severally from Defendants arising form the same series of transactions and occurrences, and because common questions of law and fact as to Defendants will arise in the Action.  The fact that all Defendants may not be implicated in all spams does not bar joinder: "It is not necessary that each defendant be interested as to every cause of action or as to all relief prayed for.  Judgment may be given against one or more defendants according to their respective liabilities."  Code Civ. Proc. § 379.

## IV.  JURISDICTION AND VENUE

### A.    Jurisdiction is Proper in a California Superior Court

57.    This California Superior Court has jurisdiction over the Action because: a) Each Plaintiff is domiciled in and a citizen of California; b) Plaintiffs seek more than $35,000 in statutory damages (but no actual damages); c) Defendants targeted the emails advertising CONVERSION at Plaintiffs in California; and d) Plaintiffs' statutory right to be free from unlawful spams was violated in California and California has an interest in adjudicating their claims.

### B.    Venue is Proper in Marin County

58.    Venue is proper in Marin County (or indeed, any county) because Lead Defendant CONVERSION is a foreign company that has not designated the location and address of a current principal office in California.  *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246-247 (4th Dist. 1970).

## V.  AT LEAST 234 UNLAWFUL SPAMS

59.    Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction."  *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Sep. 4, 2025).

60.    California's False Advertising Law, Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted).

"Fraud" in the context of a Business & Professions Code § 17500 False Advertising action does

not mean the common-law tort. *Id.* Claims for violations of Section 17529.5 are not claims for common-law fraud. *Hypertouch,* 192 Cal. App. 4th at 820. Plaintiffs are not bringing claims for fraud and are not required to plead with particularity.

## A.    The Emails at Issue are "Spams"; Counts

61.    CONVERSION advertised in at least 234 emails that Plaintiffs received within the one-year statute of limitations,[1] as follows:

| PLAINTIFF | COUNT | PLAINTIFF | COUNT | PLAINTIFF | COUNT |
|---|---|---|---|---|---|
| ANDERSON | 8 | JONES | 4 | PEREDA | 1 |
| BRADSHAW | 10 | KIRBY | 2 | ROGERS | 34 |
| BRYANT | 55 | LOVE | 4 | THORNABAR | 1 |
| CLARK | 11 | MARTIN | 1 | WELLS | 2 |
| GOODMAN | 3 | MCBRIDE | 15 | WHITTAKER | 49 |
| HARRIS | 1 | MEDINA | 3 | WILLIAMS | 26 |
| JOHNSON | 4 | | | TOTAL | 234 |

62.    Plaintiffs received all of the CONVERSION emails at issue at their "California email addresses."[2]

63.    The emails at issue are "commercial email advertisements"[3] because they were initiated for the purpose of advertising and promoting CONVERSION and its dating website/services.

64.    The emails at issue are "unsolicited commercial email advertisements"[4] aka "spams" because Plaintiffs never gave "direct consent"[5] to CONVERSION (the advertiser) to send them emails, and never had a "preexisting or current business relationship"[6] with CONVERSION.

---

[1] Code Civ. Proc. § 340(a); *Hypertouch,* 192 Cal. App. 4th at 840-45.

[2] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state." Bus. & Prof. Code § 17529.1(b).

[3] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

[4] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

**14**

65.     Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs did not do anything to deliberately receive the spams at issue.   Plaintiffs did not waive any claims related to the spams at issue.  Plaintiffs did not direct or ratify the conduct of CONVERSION or any other Defendant.  Plaintiffs did not consent to CONVERSION's or any other Defendant's Terms & Conditions or Privacy Policy, if any such documents exist.

66.     The spams are all unlawful and violate Section 17529.5 because they include:

- Third parties' domain names without permission (*see* Section B, below);
- Materially false, misrepresented, and/or forged information contained in or accompanying the email headers[7] (*see* Sections C-E, below); and/or
- Subject Lines that are misleading as to the contents or subject matter of the spams (*see* Section F, below).

**B.    Spams Containing Third Parties' Domain Names Without Permission Materially Violate Section 17529.5(a)(1)**

67.     Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.  Unlike (a)(2) violations, (a)(1) violations are not limited to email headers.

68.     The third parties' domain names identified in this section do not appear in Exhibits A-C because the Exhibits only show the spams as rendered by an Internet browser; these third-parties' domain names appear (without permission) in the full headers and/or source code.

---

[5] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative."  Bus. & Prof. Code § 17529.1(d) (emphasis added).

[6] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []"  Bus. & Prof. Code § 17529.1(*l*).

[7] The terms "email header," "header," "headers," and "header information" are all synonymous and used interchangeably throughout this pleading, and carry the commonly understood meaning of those terms (i.e. including From, To, CC, Subject, and Date fields).  *See* Internet Engineering Task Force, RFC 5322 – INTERNET MESSAGE FORMAT at § 3.6 (*19) (October 2008), *available at* https://tools.ietf.org/html/rfc5322.  In a nutshell, RFC 5322 sets forth the technical protocols that enable email to work.

**COMPLAINT FOR LIQUIDATED DAMAGES**

69.    Twenty-seven (27) of the spams at issue include the domain name **elasticemail.com**.  On information and belief, third-party Elastic Email Inc. owns the domain name elasticemail.com.  On information and belief, Elastic Email Inc. prohibits the use of its services/domain name for spamming.

70.    Seventy-three (73) of the spams at issue include the domain name **googleapis.com**.  On information and belief, third-party Google LLC owns the domain names googleapis.com.  On information and belief, Google LLC prohibits the use of its services/domain name for spamming.

71.    Three (3) of the spams at issue include the domain name **sailthru.com**.  On information and belief, third-party Marigold USA Inc. owns the domain name sailthru.com.  On information and belief, Marigold USA Inc. prohibits the use of its services/domain name for spamming.

72.    Therefore, Plaintiffs allege that neither CONVERSION nor its spammers had permission to use any of the third parties' domain names identified in this section in any of the spams at issue.

73.    In total, 103 – almost half – of the spams at issue include one or more domain names owned by third parties who prohibit the use of their domain names/services for spamming, and therefore violate Section 17529.5(a)(1).

74.    Plaintiffs are informed and believe and thereon allege that CONVERSION's spammers included these domain names in the spams precisely because these domain names are owned by legitimate companies that prohibit spamming using their domain names/services.  Thus, the spams materially violate Section 17529.5 because they inherently falsely and deceptively suggest that Elastic Email Inc. *et al* endorse and ratify CONVERSION and its dating websites/services, *and* CONVERSION and its marketing partners/agents' spamming practices, which they do not.

**C.    Spams Sent Using Domain Names That are Not Readily Traceable to the Sender Materially Violate Section 17529.5(a)(2)**

75.    Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

76.    Registration information for the domain names used to send spams is information contained in or accompanying email headers.

77.    Email headers include the sending email address field, which is comprised of a *username* (the part before the @ sign) and the *domain name* (the part after the @ sign, ending with .com, .net, .us, .gov, .edu, etc.).  *See* RFC 5322, *supra* at n.7.

**COMPLAINT FOR LIQUIDATED DAMAGES**

78.     All of the sending domain names (e.g. babeinyourarea.com in the exemplar spam shown in Exhibit A) violate Section 17529.5(a)(2) and are at issue in this Action.

79.     As a matter of substantive and controlling California law, a commercial emailer's use of not-readily-traceable[8] domain names to conceal its identity constitutes a material misrepresentation and violates Section 17529.5(a)(2), and so such claims are not preempted by the federal CAN-SPAM Act. *Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1098-1101 (1st Dist. 2012); *Greenberg*, 65 Cal. App. 5th at 919-920.

80.     The *Balsam* court went into great detail about the importance of being able to *identify* a spam's *sender*. 203 Cal. App. 4th at 1098-99. Namely, because the spammers – i.e., the actual senders – and not the advertisers control the lists of email addresses to which the spams are sent. Indeed, the *Balsam* appellate court affirmed the trial court's judgment in plaintiff's favor due to untraceable sending domain names, even where the spams clearly identified the advertiser in the bodies. *Id.* at 1090-91 and 1101 n.16 ("Trancos also points out each e-mail included the advertiser's physical address. However, when the sender and advertiser are unrelated entities, including the advertiser's purported address does not affect whether the sender's identity is falsified or misrepresented"). *See also Greenberg,* 65 Cal. App. 5th at 920 ("We have already rejected [the Advertiser's] claim that it is immune from liability based on the emails' [sending] domain names so long as *it* is identified in the body of an email, and we perceive no other reason it should not be responsible for its marketing partners' misrepresentation of their own identities"). Accordingly, even though the bodies of most of the spams identify the *advertiser* CONVERSION, that does not "cure" the undisputable fact that the sending domain names are not traceable to the *actual senders*. Furthermore, even if the body of a spam states a spammer's true address but not its name, the ability to *contact* a spammer is not the same thing as *identifying* the spammer. *Balsam*, 203 Cal. App. 4th at 1090 n.7, 1100-01.

81.     Although Plaintiffs do not bring claims under the federal CAN-SPAM Act, Plaintiffs point out that that the first item in the FTC's CAN-SPAM Act compliance guidelines states:

> **1. Don't use false or misleading header information.** Your "From," "To," "Reply-To," and routing information – *including the originating domain name*

---

[8] A "traceable" domain name means that an ordinary recipient could identify the sender by querying a publicly accessible database such as Whois. "Traceable" does *not* mean that only a trained investigator or a determined litigant armed with discovery and subpoena rights could identify the sender. *Balsam*, 203 Cal. App. 4th at 1098.

**17**

COMPLAINT FOR LIQUIDATED DAMAGES

*and email address* – must be accurate and identify the person or business who initiated the message.

*See* Federal Trade Commission, CAN-SPAM ACT: A COMPLIANCE GUIDE FOR BUSINESS, *available at* https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business (last visited Sep. 4, 2025) (emphasis added).

82.    Besides those FTC guidelines, the CAN-SPAM Act makes much of the conduct alleged in this Complaint a felony.[9]  While Plaintiffs cannot and do not bring claims under the federal CAN-SPAM Act, if CONVERSION's spammers' actions constitute felony fraud under federal law, such actions surely constitute material falsity and deception and violate Section 17529.5.

83.    Plaintiffs do not argue that the sending domain names must explicitly state the legal name of the senders.  Rather, Plaintiffs simply argue that whatever a domain name is or however it is registered, it cannot be false, misrepresented, or misleading.  *Truth* is not a "label" or a "labeling requirement."

84.    None of the domain names that CONVERSION's spammers used to send the spams at issue identify the spammers on their faces.  None of the sending domain names are readily traceable to the actual sender by querying a publicly available database such as Whois.  More specifically:

### 1. Proxy-Registered and Redacted-for-Privacy Domain Names

85.    CONVERSION's spammers sent 24 of the spams at issue to Plaintiffs from nine domain names that were proxy-registered, and sent 121 of the spams at issue from 21 domain names from which the spammers' identifying information was redacted for privacy.  *See* Exhibit D, incorporated herein by reference.  Either way, CONVERSION's spammers' true identities do not appear in the Whois database.  To name just one example, a query for the sending domain name babeinyourarea.com (*see* Exhibit A, incorporated herein by reference) shows that the owner's information has been "Withheld for Privacy Purposes."  Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities who actually controlled these domain names and sent these spams.

---

[9] The criminal portion of the CAN-SPAM Act, 18 U.S.C. § 1037(a)(4), prohibits knowingly "register[ing], using information that materially falsifies the identity of the actual registrant, for [ ] two or more domain names, and intentionally initiat[ing] the transmission of multiple commercial electronic mail messages from any combination of such accounts or domain names," or conspiring to do so.  Under subsection (b), penalties include fines, imprisonment, or both.

**18**

**COMPLAINT FOR LIQUIDATED DAMAGES**

### 2. *Domain Names with False or Misrepresented Registration Information*

86.    CONVERSION's spammers sent 16 of the spams at issue to Plaintiffs from seven domain names that are registered to fake names/entities, claiming addresses at commercial mail receiving agencies ("CMRAs") or at other businesses, or at a residential address. *See* Exhibit D, incorporated herein by reference. To name just one example, the sending domain name fetchhigherincomejobs.com (*see* Exhibit B, incorporated herein by reference) is registered to "Necron Systems, 3809 S General Bruce Dr #A103, Box 306, Temple, TX 76502." According to the Texas Secretary of State, there is no such entity or fictitious business name "Necron Systems." Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities who actually controlled these domain names and sent these spams.

### 3. *Unregistered (Purported) Domain Names in Forged Headers*

87.    CONVERSION's spammers forged the headers of 73 of the spams they sent to Plaintiffs – separate violations of Section 17529.5 – to make it *appear* that the spams were sent from 73 various garbled and nonsensical domain names. *See* Exhibit D, incorporated herein by reference. In fact, these (purported) domain names were *never* registered, or at a minimum, were not registered when the spams at issue were sent. To name just one example, a query for the domain name fuunbh92.us (*see* Exhibit C, incorporated herein by reference) shows no match at all. Accordingly, a person querying the Whois database for these (purported) domain names would not be able to identify the entities who actually sent these spams.

---

88.    Therefore, all 234 spams materially violate Section 17529.5(a)(2) due to the false and misrepresented registration information for the (actual or purported) sending domain names.

### D.    Spams With Forged Headers Materially Violate Section 17529.5(a)(2)

89.    Section 17529.5(a)(2) prohibits forged information contained in or accompanying email headers.

90.    As described above, 73 of the spams were *purportedly* sent from 73 domain names (*see* Exhibit D, incorporated herein by reference) but, on information and belief, *none* of these spams were actually sent from these (purported) domain names. CONVERSION's spammers, for whom CONVERSION is strictly liable, forged the headers of these spams to make it *appear* as though the spams were sent from these domain names.

**19**

COMPLAINT FOR LIQUIDATED DAMAGES

91.     There is no valid legal basis to forge header information, and forging sending domain names clearly misrepresents who is actually sending the spams.

**E.   Spams With False Information in the From Name Field Materially Violate Section 17529.5(a)(2)**

92.     Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

93.     <u>Ten</u> of the spams at issue state "jhfarm" – the username part of Plaintiff BRADSHAW's email address – in the *From Name* field. *See* Exhibit C, incorporated herein by reference. Thus, these spams facially – and falsely – claim that BRADSHAW *sent* these spams. In fact, these spams actually assert that BRADSHAW is a spammer acting on behalf of CONVERSION, instead of being the unwilling *recipient* of the spams.

94.     <u>Five</u> of the spams at issue state "Stacymcbride" – the username part of Plaintiff MCBRIDE's email address – in the *From Name* field. Thus, these spams facially – and falsely – claim that MCBRIDE *sent* these spams. In fact, these spams actually assert that MCBRIDE is a spammer acting on behalf of CONVERSION, instead of being the unwilling *recipient* of the spams.

95.     Therefore, these <u>15</u> spams materially violate Section 17529.5(a)(2) due to the false and misrepresented registration information in the From Name field.

**F.   Spams With Subject Lines Likely to Mislead a Recipient as to the Contents or Subject Matter of the Spams Materially Violate Section 17529.5(a)(3)**

96.     Section 17529.5(a)(3) prohibits Subject Lines that a person knows is likely to mislead a reasonable recipient about a material fact regarding the contents or subject matter of the emails.

97.     <u>Fifteen</u> of the spams at issue have the Subject Line "I want your PhoneNumber [eight random characters]." *See* Exhibit C, incorporated herein by reference. An email with this Subject Line could just as easily be from a prospective dog-walker or from a parent trying to set up a play-date for their child or from a lost food delivery person who needs the recipient's telephone number in order to coordinate delivery. Regardless, the "I" in the Subject Line clearly (but falsely) indicates that the email is from an actual *person* who wants Plaintiffs' telephone number, as opposed to merely generically promoting CONVERSION's dating websites/services.

98.     Therefore, these <u>15</u> spams at issue have a Subject Line that materially violates Section 17529.5(a)(3) because the Subject Line is likely to mislead a reasonable recipient as to the true

**COMPLAINT FOR LIQUIDATED DAMAGES**

contents and subject matter of these spams, which is promoting CONVERSION's dating websites/ services.

**G.    Subsequent Truth Does Not Cure Initial Falsity**

99.    Truthful information anywhere in a spam does not cure false or misrepresented information in the headers. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (4th Dist. 2018), citing with approval *Williams v. Gerber Products Company*, 552 F.3d. 934, 939-40 (9th Cir. 2008) (ruling based on California law).

100.    Importantly, the *Balsam* court ruled that the seven spams at issue on appeal violated Section 17529.5 due to the untraceable sending domain names, *even though the bodies of most of the spams identified the advertisers*.  For example, the court affirmed the judgment in the plaintiff's favor as to Email No. 1, which did not identify the spammer/actual sender Trancos Inc., even though identified the advertiser "Strategic Financial Publishing Inc." in the body and provided its address in Indiana.  203 Cal. App. 4th at 1093, 1090-1091, 1101.  *See also Greenberg,* 65 Cal. App. 5th at 920.

101.    Although certain portions of (most of) the spams identify CONVERSION, just as the sending domain names do not identify the actual senders, the bodies of the spams do not identify the senders either.  More specifically:

102.    Nearly half – 107 – of the spams do not provide any information at all about the actual sender. *See* Exhibit C, incorporated herein by reference.

103.    Nearly half – 111 – of the spams (those sent by MLB) do not identify the actual sender. "MLB," "COG," "RG," and "SDM" are meaningless. Eighty-five (85) of these spams provide the address "4600 Kietzke Ln, Reno, NV 89502." *See* Exhibit A, incorporated herein by reference.  But 4600 Kietzke Lane in Reno is an office complex with multiple buildings and offices.  The other 26 spams state "N-54," but that building/office is associated with other entities.  However, even if the address were valid, a mere address still does not identify the actual sender.

104.    Fifteen (15) of the spams state addresses that are boxes at CMRAs without identifying the actual sender, *see* Exhibit B, incorporated herein by reference, or purport to identify the sender but no such entity exists.

105.    One (1) of the spams states a residential address in Alexandria, Virginia, but again, stating an address – even if it is the spammer's true address – does not identify the spammer.

106.    A spam recipient is under no obligation to click a link in a spam to try to figure out who actually sent the spam, or for any other reason. Indeed, the Federal Trade Commission, California Attorney General, and California state and federal courts expressly advise consumers to *not* click links in spams sent by unknown spammers.[10] Accordingly, Plaintiffs did not attempt to unsubscribe from the CONVERSION spams by clicking links in the spams.

**H.    CONVERSION is Strictly Liable for Advertising in Spams Sent By Its Spammers; the Spammers and Spam Networks are Liable Too**

107.    The spams at issue all promote CONVERSION and its dating websites/services. CONVERSION benefits by the spamvertising when recipients see and act upon the spams.

108.    CONVERSION, as the advertiser, is strictly liable for advertising in the spams at issue, even though it engaged spam networks who conspired with the spammers, and the spammers aided and abetted CONVERSION's unlawful spamvertising by actually sending the spams. Bus. & Prof. Code § 17529(j), (k) and 17529.5(a). To be clear, Plaintiffs allege that CONVERSION did not actually send the spams.

109.    Moreover, California courts reject advertisers' claims that they are immune from liability based on an email's sending domain name simply because the advertiser is identified in the body of an e-mail. *Balsam*, 203 Cal. App. 4th at 1090-91; *Greenberg*, 65 Cal. App. 5th at 921. Ultimately, California courts have consistently held that where an advertiser's spammers misrepresent their identities, the advertiser is responsible. *Greenberg*, 65 Cal. App. 5th at 920, citing *Hypertouch*, 192 Cal. App. 4th at 820-21. Of course, CONVERSION's spammers are also

---

[10] "A Federal Trade Commission (FTC) study conducted before enactment of the CAN-SPAM Act found that most purported 'remove me' links and addresses in a sample of 200 unsolicited commercial e-mails were invalid or ineffective. *Balsam*, 203 Cal. App. 4th at 1099 n.13.

From at least March 29, 2007 through at least April 27, 2023, the California Attorney General has expressly advised consumers "Never respond to unsolicited email. Your response is likely to trigger more spam to your email address." At some point between April 28, 2023 and May 17, 2023, the language changed and now the Attorney General advised consumers "Do not click on links or open attachments contained in suspicious emails."

*See also Balsam*, 203 Cal. App. 4th at 1100 ("Attempting to unsubscribe is not a practical option when the unwilling recipient has no ability to determine the sender's identity or good faith"); *Ferguson v. FriendFinders Inc.*, 94 Cal. App. 4th 1255, 1268 (1st Dist. 2002) ("Deceptive [spam] can be difficult if not impossible to identify without opening the message itself. Having to take that extra step can be more than a waste of time and money. [Spam] has been successfully used to spread harmful computer viruses"); *Phillips v. NetBlue Inc.*, No. C-05-4401 SC, 2006 U.S. Dist. LEXIS 92573 (N.D. Cal. 2006) (denying defendant's motion for leave to amend answer as futile because spam recipients have no obligation to unsubscribe).

**COMPLAINT FOR LIQUIDATED DAMAGES**

liable for aiding and abetting CONVERSION's unlawful spamvertising, and the spam networks are liable for conspiring with the spammers to do so.

110.    No one forced CONVERSION to outsource any of its advertising to third party spam networks and spammers, but CONVERSION chose to (directly or indirectly) contract with and partner with the spam networks and the spammers – disreputable entities who actively took steps to conceal their identities by forging email headers, proxy-registering their domain names or redacting their identities from the Whois database, registering domain names to fake names and addresses, failing to identify themselves in the bodies of the spams, and including third parties' domain names without permission – all to promote CONVERSION, for a profit.

111.    CONVERSION's spammers created certain false, misrepresented, and misleading information as they sent the instant spams promoting CONVERSION, and the spammers must be held liable for aiding and abetting CONVERSION's violations of Section 17529.5 because these spammers are the entities who actually caused CONVERSION to advertise in unlawful spams. Although the spammers are not *strictly* liable *directly* under Section 17529.5, nothing in the statute prohibits imposing liability on the spammers for the actual acts that aided and abetted CONVERSION advertising in unlawful spams.

112.    CONVERSION's spam networks conspired with the spammers to aid and abet CONVERSION's violations of Section 17529.5. Although the spam networks are not *strictly* liable *directly* under Section 17529.5, nothing in the statute prohibits imposing liability on the spam networks for conspiring with the actual spammers who aided and abetted CONVERSION advertising in unlawful spams.

**I.    Plaintiffs Sue for Statutory Liquidated Damages; No Allegations or Proof of Reliance or Actual Damages is Necessary**

113.    The California Legislature defined liquidated damages to be $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii). This figure is designed to be punitive, rather than compensatory for actual damages. *Hypertouch*, 192 Cal. App. 4th at 842-845. The *Balsam* appellate court affirmed the trial court's award of $1,000 per spam, for the seven spams at issue on appeal.

114.    The $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

**COMPLAINT FOR LIQUIDATED DAMAGES**

115.    Plaintiffs' rightful and lawful demand for statutory liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam and punishing offenders.  In fact, California's spam law even has a criminal component at Section 17529.5(b)(3)(C) – it is a misdemeanor to advertise in spams that violate Section 17529.5.

116.    Section 17529.5 does not require Plaintiffs to allege, suffer, or quantify any actual damages; allege or prove reliance on the advertisements contained in the spams; visit CONVERSION's websites; or sign up for CONVERSION's services.  *Recipients* of unlawful spam have standing to sue and recover liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.  Here, Plaintiffs suffered actual damages from the receipt of the CONVERSION spams at issue, but only seek to recover statutory damages.  Bus. & Prof. Code § 17529.5(b)(1)(B).

**J.    Defendants' Actions (and Inactions) Were Willful and Preclude any Reduction in Statutory Damages**

117.    Section 17529.5 authorizes a court to reduce the statutory liquidated damages to $100 per spam.  Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that they *established* reasonable practices and procedures to prevent unlawful spamvertising, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

118.    Defendants have not established, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

119.    Even if Defendants had established, with due care, any practices and procedures to prevent advertising in unlawful spams, such practices and procedures were not reasonably designed to be effective.

120.    Even if Defendants had reasonably designed practices and procedures to prevent advertising in unlawful spams, such practices and procedures were not implemented to be effective.

121.    On at least two prior occasions, California recipients of CONVERSION spams have made claims against CONVERSION for violations of Section 17529.5.  Thus, CONVERSION is well aware of the existence of Section 17529.5, its requirements, and the risks of violating the

24

COMPLAINT FOR LIQUIDATED DAMAGES

statute. Clearly, CONVERSION either does not care about violating Section 17529.5 (because it profits from unlawful spamvertising), or it is incapable of ensuring that its marketing partners/ agents do not violate the statute. Either way, CONVERSION cannot avail itself of the practices and procedures reduction.

122. To the extent that any of CONVERSION's spam networks may have violated the terms of their marketing contracts with CONVERSION, or any of the spammers violated the terms of their contracts with the spam networks, that demonstrates that the contracts – and any compliance requirements included therein – are ineffective.

123. Domain names do not register themselves. Third parties' domain names do not insert themselves into emails. Subject Lines and email bodies do not write themselves. The multiple statutory violations in these spams are not "clerical errors." Defendants went to great lengths to create the false, deceptive, and misleading content described herein to deceive recipients as to who sent the spams.

124. Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

## FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5]**
**(Against Defendants CONVERSION and DOES 1-100)**

125. Plaintiffs hereby incorporate paragraphs 1-124 as though set forth in full herein.

126. The statute of limitations for plaintiffs seeking liquidated damages for violations of Section 17529.5 is one year. *Hypertouch*, 192 Cal. App. 4th at 845. Each Plaintiff received the spams for which they sue within one year prior to filing the Complaint.

127. CONVERSION and DOES 1-100 advertised in at least 234 unsolicited commercial email advertisements that Plaintiffs received at their California electronic mail addresses that had: a) Third parties' domain names without permission; b) Materially false, misrepresented, and/or forged information contained in or accompanying the email headers; and/or c) Subject Lines that are materially misleading as to the contents or subject matter of the spams, as follows:

25

**COMPLAINT FOR LIQUIDATED DAMAGES**

| PLAINTIFF | COUNT | PLAINTIFF | COUNT | PLAINTIFF | COUNT |
|-----------|-------|-----------|-------|-----------|-------|
| ANDERSON | 8 | JONES | 4 | PEREDA | 1 |
| BRADSHAW | 10 | KIRBY | 2 | ROGERS | 34 |
| BRYANT | 55 | LOVE | 4 | THORNABAR | 1 |
| CLARK | 11 | MARTIN | 1 | WELLS | 2 |
| GOODMAN | 3 | MCBRIDE | 15 | WHITTAKER | 49 |
| HARRIS | 1 | MEDINA | 3 | WILLIAMS | 26 |
| JOHNSON | 4 | | | **TOTAL** | **234** |

128.    The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

129.    CONVERSION is strictly liable for its marketing partners' unlawful spamvertising.

130.    The California Legislature set liquidated damages at $1,000 per spam.

131.    Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

132.    Plaintiffs seek reimbursement of their costs, including attorneys' fees, as authorized by Section 17529.5(b)(1)(C). *See also* Code Civ. Proc. § 1033.5(a)(10)(B), (c)(5)(A).

133.    The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5.  If 19 individuals collectively received 234 CONVERSION spams in the last year, then there were likely *millions* of CONVERSION spams sent to Californians during that period.  By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.  Although Code of Civil Procedure § 1021.5 generally authorizes attorneys' fees for a prevailing party, a prevailing defendant in an unfair competition lawsuit[11] such as this one cannot recover attorneys' fees under Section 1021.5. *Walker v. Countrywide Home Loans Inc.*, 98 Cal. App. 4th 1158, 1164 (2d Dist. 2002).  Separately, even if Defendants were to prevail in this Action, they still could not recover their attorneys' fees under Code of Civil Procedure § 1021.5 (enacted 1977) because Section 17529.5 (enacted 2003) and its one-way attorneys' fees provision is both more recent and more

---

[11] Business & Professions Code § 17529.5 is part of Section 17500 (false advertising law), which is expressly incorporated into Section 17200 (unfair competition law).

COMPLAINT FOR LIQUIDATED DAMAGES

specific than Code of Civil Procedure § 1021.5. *Department of Fair Employment & Housing v. Cathy's Creations Inc.*, 54 Cal. App. 5th, 404, 412-416 (5th Dist. 2020).

134.    WHEREFORE, Plaintiffs pray for judgment against these Defendants as hereinafter set forth.

### SECOND CAUSE OF ACTION

**[Aiding and Abetting Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5]**
**(Against Defendants EXPLORE, HOUSING, MLB, NECRON, NET MEDIA1, SELL MY HOUSE FAST, WALLETMONKEYS, AFFID=495, AFFID=1184, AFFID=2658, and DOES 101-900)**

135.    Plaintiffs hereby incorporate paragraphs 1-124 as though set forth in full herein.

136.    The statute of limitations for plaintiffs seeking liquidated damages for violations of Section 17529.5 is one year. *Hypertouch*, 192 Cal. App. 4th at 845. Each Plaintiff received the spams for which they sue within one year prior to filing the Complaint.

**A.    The Spammers Aided and Abetted CONVERSION's Unlawful Spamvertising**

137.    The *spammers (actual senders)* named in this cause of action – Defendants EXPLORE, HOUSING, MLB, NECRON, NET MEDIA1, SELL MY HOUSE FAST, WALLETMONKEYS, and DOES 101-500 – aided and abetted CONVERSION's unlawful spamvertising in at least 234 unsolicited commercial email advertisements that they sent to Plaintiffs at their California electronic mail addresses that had: a) Third parties' domain names without permission; b) Materially false, misrepresented, and/or forged information contained in or accompanying the email headers; and/or c) Subject Lines that are materially misleading as to the contents or subject matter of the spams, as follows:

| PLAINTIFF | COUNT | PLAINTIFF | COUNT | PLAINTIFF | COUNT |
|---|---|---|---|---|---|
| ANDERSON | 8 | JONES | 4 | PEREDA | 1 |
| BRADSHAW | 10 | KIRBY | 2 | ROGERS | 34 |
| BRYANT | 55 | LOVE | 4 | THORNABAR | 1 |
| CLARK | 11 | MARTIN | 1 | WELLS | 2 |
| GOODMAN | 3 | MCBRIDE | 15 | WHITTAKER | 49 |
| HARRIS | 1 | MEDINA | 3 | WILLIAMS | 26 |
| JOHNSON | 4 | | | TOTAL | 234 |

138.    The *spammers* named in this cause of action knew that CONVERSION was going to commit torts – advertising in unlawful spams in violation of Section 17529.5 – against Plaintiffs,

27

COMPLAINT FOR LIQUIDATED DAMAGES

because it was these Defendants who, on information and belief, created and sent the unlawful spams. In most cases, it was these Defendants' acts (e.g. sending spams from proxy-registered domain names) that constituted the violations of Section 17529.5 alleged herein.

139.    The *spammers* in this cause of action substantially assisted CONVERSION in advertising in criminally unlawful spams in violation of Section 17529.5. In fact, on information and belief, it was these Defendants who created and sent the unlawful spams. In most cases, it was these Defendants' acts (e.g. sending spams from proxy-registered domain names) that constituted the violations of Section 17529.5 alleged herein.

140.    These conduct of the *spammers* named in this cause of action was a substantial factor in causing harm to Plaintiffs – i.e., the violation of their statutory right to be free from receiving unlawful spams – because their conduct caused CONVERSION to violate Section 17529.5 by advertising in the unlawful spams at issue that Plaintiffs received.

**B.    The Spam Networks Conspired with the Spammers to Aid and Abet CONVERSION's Unlawful Spamvertising**

141.    The *spam networks* in this cause of action – AFFID=495, AFFID=1184, AFFID=2658, and DOES 501-900 – conspired with the spammers/actual senders to aid and abet CONVERSION's unlawful spamvertising in at least <u>234</u> unsolicited commercial email advertisements (as above). On information and belief, the spam networks and the spammers agreed to share the benefits and the risks of the spamvertising. The spam networks and the spammers formed these conspiracies by virtue of entering agreements together. The spam networks effectuated the conspiracies by serving as a middleman between the spammers and CONVERSION by, for instance: a) Contracting with the spammers to send spams promoting CONVERSION; b) Transferring advertising content (e.g. Subject Lines and graphics) from CONVERSION to the spammers whom the networks knew would be sending spams to recipients whom the spammers had no reason to believe ever gave direct consent to CONVERSION to receive its emails or had preexisting or current business relationships with CONVERSION; c) Directing spam recipients who click on the spams to CONVERSION's dating websites; and d) Transferring affiliate commissions generated by unlawful spamvertising from CONVERSION back to the spammers. The spam networks knew that the spammers were going to aid and abet CONVERSION with respect to advertising in unlawful spams, and permitted and ratified such conduct. But for the spam networks' conspiracies with the spammers

to aid and abet CONVERSION's unlawful spamvertising, the unlawful spams would not have been sent and Plaintiffs' statutory rights would not have been violated.

142.    Plaintiffs were harmed (the violation of their statutory right to be free of receiving unlawful spams) by the spammers' aiding and abetting CONVERSION advertising in unlawful spams, and the spam networks are responsible for the harm because they were part of a conspiracy to aid and abet CONVERSION's unlawful spamvertising.

143.    The spam networks were aware that the spammers (and others) planned to aid and abet CONVERSION's unlawful spamvertising.

144.    The spam networks agreed with the spam networks (and others) and intended that the aiding and abetting of CONVERSION's unlawful spamvertising be committed.

**C.    As to Both Spammers and Spam Networks**

145.    The California Legislature set liquidated damages at $1,000 per unlawful spam.

146.    These Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

147.    Plaintiffs seek reimbursement of their costs, including attorneys' fees, as authorized by Section 17529.5(b)(1)(C). *See also* Code Civ. Proc. § 1033.5(a)(10)(B), (c)(5)(A).

148.    The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. If 19 individuals collectively received 234 CONVERSION spams in the last year, then there were likely *millions* of CONVERSION spams sent to Californians during that period. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. Although Code of Civil Procedure § 1021.5 generally authorizes attorneys' fees for a prevailing party, a prevailing defendant in an unfair competition lawsuit[12] such as this one cannot recover attorneys' fees under Section 1021.5. *Walker v. Countrywide Home Loans Inc.*, 98 Cal. App. 4th 1158, 1164 (2d Dist. 2002). Separately, even if Defendants were to prevail in this Action, they still could not recover

---

[12] Business & Professions Code § 17529.5 is part of Section 17500 (false advertising law), which is expressly incorporated into Section 17200 (unfair competition law).

their attorneys' fees under Code of Civil Procedure § 1021.5 (enacted 1977) because Section 17529.5 (enacted 2003) and its one-way attorneys' fees provision is both more recent and more specific than Code of Civil Procedure § 1021.5. *Department of Fair Employment & Housing v. Cathy's Creations Inc.*, 54 Cal. App. 5th, 404, 412-416 (5th Dist. 2020).

149. WHEREFORE, PLAINTIFFS pray for judgment against these Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

### (Against All Defendants)

A. A Court Order declaring that CONVERSION and DOES 1-100 violated Section 17529.5 by advertising in unlawful spams sent to Plaintiffs that promoted CONVERSION, its websites, and its goods and services.

B. A Court Order declaring that EXPLORE, HOUSING, MLB, NECRON, NET MEDIA1, SELL MY HOUSE FAST, WALLETMONKEYS, and DOES 101-500 (the spammers) aided and abetted CONVERSION's violations of Section 17529.5.

C. A Court Order declaring that AFFID=495, AFFID=1184, AFFID=2658, and DOES 501-900 (the spam networks) conspired with the spammers to aid and abet CONVERSION's violations of Section 17529.5.

D. Judgment in Plaintiffs' favor, and jointly and severally against CONVERSION and DOES 1-100 in the amount of $1,000 liquidated damages per spam, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of $234,000, as follows:

| PLAINTIFF | JDGMNT | PLAINTIFF | JDGMNT | PLAINTIFF | JDGMNT |
|---|---|---|---|---|---|
| ANDERSON | $8,000 | JONES | $4,000 | PEREDA | $1,000 |
| BRADSHAW | $10,000 | KIRBY | $2,000 | ROGERS | $34,000 |
| BRYANT | $55,000 | LOVE | $4,000 | THORNABAR | $1,000 |
| CLARK | $11,000 | MARTIN | $1,000 | WELLS | $2,000 |
| GOODMAN | $3,000 | MCBRIDE | $15,000 | WHITTAKER | $49,000 |
| HARRIS | $1,000 | MEDINA | $3,000 | WILLIAMS | $26,000 |
| JOHNSON | $4,000 | | | TOTAL | $234,000 |

E. Judgment in Plaintiffs' favor, and against each of EXPLORE, HOUSING, MLB, NECRON, NET MEDIA1, SELL MY HOUSE FAST, WALLETMONKEYS, and DOES 101-500 (the spammers), jointly and severally with CONVERSION and DOES 1-100, in

COMPLAINT FOR LIQUIDATED DAMAGES

the amount of $1,000 for each unlawful spam (according to proof) for which that Defendant aided and abetted CONVERSION's unlawful spamvertising.

F.    Judgment in Plaintiffs' favor, and against each of AFFID=495, AFFID=1184, AFFID=2658, and DOES 501-900 (the spam networks), jointly and severally with CONVERSION and DOES 1-100, in the amount of $1,000 for each unlawful spam (according to proof) for which that Defendant conspired with the spammers to aid and abet CONVERSION's unlawful spamvertising.

G.    Costs of suit, pursuant to Code of Civil Procedure §§ 1032 and 1033.5. Costs include attorneys' fees as authorized by Section 17529.5(b)(1)(C), pursuant to Code of Civil Procedure § 1033.5(c)(5)(A).

H.    Such other and further relief as the Court deems proper.

THE LAW OFFICES OF DANIEL BALSAM

Date:  November 7, 2025          BY: *Daniel L Balsam*

DANIEL BALSAM
Attorneys for Plaintiffs

COMPLAINT FOR LIQUIDATED DAMAGES

# Exhibit A
**Exemplar Conversion Spam Sent to Plaintiff Darrell Rogers**

| | |
|---|---|
| **Subject:** | Add a touch of romance to your life-Find My Matches |
| **From:** | "Find My Matches" <notice@babeinyourarea.com> |
| **To:** | rogers.darrell26@yahoo.com |
| **Date:** | Sat, 28 Jun 2025 14:32:05 +0000 |

<u>Find Your Match</u>



<u>Click Here To Unsubscribe</u> Or write to: 15851 Dallas Parkway, Suite 600 Addison, TX 75001
If you no longer want to receive messages please <u>Unsubscribe me from this list</u> or Write MLB 4600 Kietzke Ln Reno, NV 89502

# Exhibit B
**Exemplar Conversion Spam Sent to Plaintiff Stacy McBride**

| | |
|---|---|
| **Subject:** | Meet your kind of singles near you |
| **From:** | "Find Seniors Only Daters" <info@fetchhigherincomejobs.com> |
| **To:** | stacymcbride0@gmail.com |
| **Date:** | Sun, 29 Dec 2024 16:12:11 -0500 |



# FindSeniorsOnly

# Don't Spend Fall Alone

## Connect Today!

## Browse Photos

We hope you enjoyed receiving this email. Should you no longer wish to receive emails from this company, visit this link to unsubscribe , or mail comments to 15851 Dallas Parkway, Suite 600 Addison, TX 75001

*If you would prefer not receiving our emails, please click here.*
*3809 S General Bruce Dr #A103 Temple, Texas, TX 76502*

## <u>Exhibit C</u>
**Exemplar Conversion Spam Sent to
Plaintiff Jonathan Bradshaw**

**Subject:**    I want your PhoneNumber
                        _____FUUNBH92

**From:**    " Jhfarm" <FUUNBH92.FUUNBH92@FUUNBH92.us>

**To:**    jhfarm@gmail.com

**Date:**    Mon, 11 Nov 2024 06:57:38 -0500 (EST)

## ☐ Call me!My Personal Number

## 455-01-XXXX



**View My Video**

Hello I like you so much. if you want to kown more about me please call me in my phone number .Read More...

**View My Profile**

### My Pics

☐    IMG_0035891.JPG
☐    IMG_0023658.JPG
☐    IMG_0036587.JPG

Facebook    Tiktok    Instagram

**Contact me**

Unsubscribe

# Exhibit D
## Sending Domain Names

# Sending Domain Names

## Proxy-Registered Domain Names

indoorleader.com, intlmatrix.com, letsreadyread.com, practiceforindoor.online, practiceforindoor.site, thegreentoolscamp.com, uptodateinfopress.com, uptodateinfopress.help, uttarbango.com

## Redacted-for-Privacy Sending Domain Names

babeinyourarea.com, biomedicalines.com, datetonight.online, eetrightnow.com, florencegreenery.info, funhotbabes.com, instamind.org, isohoc.com, ladieslooking.online, latehothookups.com, latenightmixers.com, luckycharmdates.com, meetfungirls.online, sexybabeslooking.com, sexymilfencounters.com, sexyromances.com, terrti.com, thebloomgb.com, updateformexpress.info, whatchlookingfor23.com, youngsingledating.com

## Domain Names with False or Misrepresented Registration Information

fetchhigherincomejobs.com, finnewsinsights.com, jobflagfinder.com, mywalletmonkeys.com, quickpropertydeals.com, yourhigherincomejobs.com, yourhousinghelp.com

## Unregistered (Purported) Sending Domain Names in Forged Headers

0gfyjqndssgszpajw3.com, 0ukekkyqcjd2jqzf7k.com, 17ckvq5o.us, 3caovawhi1d4zxlzik.com, 3jlf4sts0ykwklwsgu.com, 4qtxhn0gtjvdiibeth.com, 6rtft8mu.us, 7jdhkmyzdx3ab5ymzq.com, 7jviwd7dnwaynkbc82.com, 7nwltzhkg1nsmk7qx9.com, 8hzegmbcvlxjbgeqjn.com, 8xmvqs2bxvnljp17wh.com, 9xfc1wf3rh9vlgnesn.com, an2wvs87.us, b46g9c9p.us, bxpz1awedvnxxwmlcq.com, c1smgoh0gemf2j1ncq.com, cwkadkdzklvhvslj.net, cxnnlpzecceqcucn.net, dkr7qycn.us, dxwmsteayvgmphdwzz.com, e1pqj5y1.us, ecimiqxxiymrnrwa.net, eg91kecc.us, f0ne48oh.us, fuunbh92.us, fwgv96iff2ovulxvc4.com, gkbqnhopdxrxfbpr.net, gswvdlislpdavpgh.net, hixmavlkq20y5s2f6k.com, hsskfzdtcbrmrhdk.net, ia2n0zyz7ihnlg63zu.com, ieivwlgerypjogft.net, ifpwqnsgp7yhtx30qi.com, jgb0wwcwnttglz72xi.com, js4ql3oo.us, kf9slpz8nkddk4mcp0.com, mycpkzvxbjfaiapz.net, neyx2hkcbhzw4qikfc.com, nivsbksswxboulkq.net, oelu8yfehfvvpgpvpt.com, oxmpzbmdsiggxjaf.net, pmkqswfzlunyqxnc.net, pqgslhulksxbpfit.net, qca1ufst8eseici9ri.com, qfbluegmmcqb96eo6z.com, qqhhfg4i.us, qvcqkfleuvylltqz.net, qyjbiyio3o6f9edasf.com, rhhb731q.us, sudxml8s.us, tqajkeczwhfclihj.net, tsxllcpiaben1cz6g1.com, ugssdlahftmmfnvt.net, uzimmmmgozbiupse.net, v2ffr9mpn3nucohd1v.com, v4vcbdvefewxaxtxce.com, vvvpfkhkbbedmzye.net, vzbsgaonyziwustm.net, wvwuppscvfkbefpi.net, xbvmjvmswyo54hjjvu.com, xdqfijubiwxixbqd.net, xttf09ovxfjnymcyhn.com, y302dxi9kynpnydmsm.com, y51mkezi.us, ycif5fbmbnscpzi3ag.com, yhy3pf1lnzlxdwzxb1.com, yjrdhfgjiyzmirzy.net, ypz84kouilveaittjq.com, yrbxjxjatpqfxubf.net, yx0y3facz4ycxasaeg.com, zeblanyitxlflajq.net, zepilsw4.us

| | |
|---|---|
| **Superior Court of the State of California**<br>**County of Marin**<br>3501 Civic Center Dr<br>PO Box 4988<br>San Rafael, CA  94913-4988 | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Marin<br>**11/07/2025**<br>James M. Kim, Clerk of the Court<br>E. Riedel, Deputy |
| Kristina Kirby et al vs. Conversion Squared Corporation et al | |
| **Notice – Case Management Conference – GC68600** | **Case Number:** CV0008127 |

Pursuant to Local Rule (LR) 2.3, the Plaintiff(s) must serve the following documents together with the complaint on all Defendant(s):

- Notice – Case Management Conference (a copy of this notice)
- Case Management Statement (Judicial Council Form CM-110)
- Notice of Settlement of Entire Case (Judicial Council Form CM-200)
- Alternative Dispute Resolution Informational Notice (CV006)

1. The parties/counsel to this action shall comply with the filing and service deadlines in LR 2.5 and CRC3.110.
2. All parties must appear for:
   **Case Management Conference** on **March 27, 2026** at **9:00 am** in **Courtroom A**.
3. The parties must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. Counsel must discuss ADR options with their clients prior to attending the Case Management Conference (CMC) and should be prepared to discuss with the Court their authority to participate in ADR.
4. CMC Statements must be filed with the Court and served on all parties <u>at least 15 calendar days</u> before the CMC. **(Late filing may result in the issuance of sanctions.)**

---

I am over the age of 18 years and not a party to the above action. My business address is 3501 Civic Center Dr, San Rafael, CA 94913. On November 7, 2025, I served this **Notice – Case Management Conference** on the interested parties in said action to the addresses indicated below:

**Daniel L Balsam**
legal@danbalsam.com                    Electronically Served CCP1013(g)

**Jacob N Harker**
harkerjacob@gmail.com                    Electronically Served CCP1013(g)

I declare under penalty of perjury, that the foregoing is true and correct.

**James M. Kim,**
**Clerk of the Court and Executive Officer**
Superior Court of the State of California,
Executed at San Rafael, California        County of Marin
On: **November 7, 2025**                    By: E. Riedel, Deputy Clerk

---

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY    STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|
| NAME: | |
| FIRM NAME: | |
| STREET ADDRESS: | |
| CITY:    STATE:    ZIP CODE: | |
| TELEPHONE NO.:    FAX NO.: | |
| EMAIL ADDRESS: | |
| ATTORNEY FOR (name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
  STREET ADDRESS:
  MAILING ADDRESS:
CITY AND ZIP CODE:
  BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $35,000)　☐ **LIMITED CASE** (Amount demanded is $35,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:　　　　　　　Time:　　　　　　　Dept.:　　　　　　Div.:　　　　　　Room:

Address of court *(if different from the address above):*

☐　Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in　☐ complaint　　☐ cross-complaint　　*(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages *(if personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings; if equitable relief is sought, describe the nature of the relief):*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**

The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**

a. ☐ The trial has been set for *(date):*

b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**

The party or parties estimate that the trial will take *(check one)*

a. ☐ days *(specify number):*

b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*

The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:

e. Email address:

f. Fax number:

g. Party represented:

☐ Additional representation is described in Attachment 8.

9. **Preference**

☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b. **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

---

CM-110 [Rev. January 1, 2024]    **CASE MANAGEMENT STATEMENT**    Page 2 of 5

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.  In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CM-110**

| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

## 11. Insurance

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

## 12. Jurisdiction

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

## 13. Related cases, consolidation, and coordination

a. ☐ There are companion, underlying, or related cases.

   (1) Name of case:

   (2) Name of court:

   (3) Case number:

   (4) Status:

   ☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

## 14. Bifurcation

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

## 15. Other motions

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

## 16. Discovery

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

---

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

### 17. Economic litigation

a. ☐ This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

### 18. Other issues

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

### 19. Meet and confer

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. ☐ After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

▶

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY)

▶

_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM-200

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **NOTICE OF SETTLEMENT OF ENTIRE CASE** | CASE NUMBER: |
|---|---|
| | JUDGE:<br>DEPT.: |

---

**NOTICE TO PLAINTIFF OR OTHER PARTY SEEKING RELIEF**

You must file a request for dismissal of the entire case within 45 days after the date of the settlement if the settlement is **unconditional.** You must file a dismissal of the entire case within 45 days after the date specified in item 1b below if the settlement is **conditional.** Unless you file a dismissal within the required time or have shown good cause before the time for dismissal has expired why the case should not be dismissed, the court will dismiss the entire case.

---

**To the court, all parties, and any arbitrator or other court-connected ADR neutral involved in this case:**

1. This entire case has been settled. The settlement is:

   a. ☐ **Unconditional.** A request for dismissal will be filed within 45 days after the date of the settlement.
   Date of settlement:

   b. ☐ **Conditional.** The settlement agreement conditions dismissal of this matter on the satisfactory completion of specified terms that are not to be performed within 45 days of the date of the settlement. A request for dismissal will be filed no later than *(date):*

2. Date initial pleading filed:

3. Next scheduled hearing or conference:

   a. Purpose:

   b. ☐ (1) Date:

   (2) Time:

   (3) Department:

4. Trial date:

   a. ☐ No trial date set.

   b. ☐ (1) Date:

   (2) Time:

   (3) Department:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

| (TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY) | (SIGNATURE) |
|---|---|

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-200 [Rev. January 1, 2007] | **NOTICE OF SETTLEMENT OF ENTIRE CASE** | Cal. Rules of Court, rule 3.1385<br>*www.courts.ca.gov* |
|---|---|---|

**CM-200**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL

### NOTICE OF SETTLEMENT OF ENTIRE CASE

*(NOTE: You cannot serve the Notice of Settlement of Entire Case if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Settlement of Entire Case* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

    a. ☐ deposited the sealed envelope with the United States Postal Service.

    b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Settlement of Entire Case* was mailed:

    a. on *(date):*

    b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

    a. Name of person served:

       Street address:
       City:
       State and zip code:

    b. Name of person served:

       Street address:
       City:
       State and zip code:

    c. Name of person served:

       Street address:
       City:
       State and zip code:

    d. Name of person served:

       Street address:
       City:
       State and zip code:

    ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached _____ .

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

| CM-200 [Rev. January 1, 2007] | **NOTICE OF SETTLEMENT OF ENTIRE CASE** | **Page 2 of 2** |
|---|---|---|

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

### MARIN COUNTY SUPERIOR COURT
3501 Civic Center Drive
P.O. Box 4988
San Rafael, CA 94913-4988
(415) 444-7040



## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATIONAL NOTICE
(California Rule of Court 3.221)

**The plaintiff <u>must</u> serve a copy of this notice with the complaint on all parties to this case.**

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial.  Using ADR may have a variety of benefits, depending on the type of ADR process used and the  circumstances of the particular case.

### <u>ADVANTAGES OF ADR</u>

### Save Time

A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

### Save Money

When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

### Increase Control Over the Process and the Outcome

In ADR, parties typically play a greater role in shaping both the process and its outcome.  In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial.  Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

### Preserve Relationships

ADR can be a less adversarial way to resolve a dispute.  For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

## Increase Satisfaction

In a trial, there is typically a winner and a loser.  The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome.  ADR can help the parties find win-win solutions and achieve their real goals.  This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

## DISADVANTAGES OF ADR

If the case is resolved using ADR, the parties forgo their right to a public trial and they do not receive a decision by a judge or jury.  If the case is not resolved using ADR and it proceeds to trial, the overall costs of the case may increase.

## TYPES OF ADR

### Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute.  The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves.  Mediation leaves control of the outcome with the parties.

### Settlement Conferences

Settlement conferences may be either mandatory or voluntary.  In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute.  The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  Settlement conferences are appropriate in any case where settlement is an option.  Mandatory settlement conferences are often held close to the date a case is set for trial.

### Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are often relaxed.  Arbitration may be either "binding" or "nonbinding."  *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final.  Generally, there is no right to appeal an arbitrator's decision.  *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

### Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator."  The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved.  The evaluator is often an expert in the subject matter of the dispute.  Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

## LOCAL ADR PROGRAMS

For a Directory of Mediators and Arbitrators or information about the Modest Means Mediation Program, contact the Marin County Bar Association (MCBA) by calling (415) 499-1314 or emailing *info@marinbar.org*.  Additional information is also available on the MCBA website:  *www.marinbar.org*.

## STIPULATION TO USE ADR

If all parties in the action agree to participate in ADR, a *Stipulation to Use Alternative Dispute Resolution Process (CV002)* may be filed with the court.  This form is available at *www.marin.courts.ca.gov* or in the Clerk's Office.

Please note, **you are required to complete and submit the *Notice of Settlement of Entire Case (Judicial Council Form CM-200)* within 10 days of the resolution of your case.**

| | |
|---|---|
| **Superior Court of the State of California**<br>**County of Marin**<br>3501 Civic Center Dr<br>PO Box 4988<br>San Rafael, CA 94913-4988 | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Marin<br>**11/07/2025**<br>James M. Kim, Clerk of the Court<br>E. Riedel, Deputy |
| Kristina Kirby et al vs. Conversion Squared Corporation et al | |
| **Notice – Judicial Assignment** | **Case Number:** CV0008127 |

To All Parties and their Attorneys of Record:

This case has been assigned to **Judge Stephen P. Freccero** for all purposes. All future hearings will be scheduled before this assigned Judge in **Courtroom A.**

Notice: This assignment for all purposes must be provided to all non-appearing parties by the moving party.

---

I am over the age of 18 years and not a party to the above action. My business address is 3501 Civic Center Dr, San Rafael, CA 94913. On November 7, 2025, I served this **Notice – Judicial Assignment** on the interested parties in said action to the addresses indicated below:

**Daniel L Balsam**  
legal@danbalsam.com          Electronically Served CCP1013(g)

**Jacob N Harker**  
harkerjacob@gmail.com          Electronically Served CCP1013(g)

I declare under penalty of perjury, that the foregoing is true and correct.

**James M. Kim**  
**Clerk of the Court and Executive Officer**  
Superior Court of the State of California  
County of Marin  
By: E. Riedel, Deputy Clerk

Executed at San Rafael, California  
On: November 7, 2025

---